**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **BASSIL ALLY,** | ) | **CASE NO.4:09CV1144** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE CHRISTOPHER A. BOYKO** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **CITY OF YOUNGSTOWN, ET AL.,** | ) | **OPINION AND ORDER** |
| | ) | |
| **Defendant.** | ) | |

<u>**CHRISTOPHER A. BOYKO, J:**</u>

### I. ISSUE

This matter comes before the Court upon the Motions of Defendants the City of

Youngstown (ECF #81), Iris Guglucello (ECF # 82), Jay Macejko (ECF # 83), and  Jay Williams

(ECF # 84), for Summary Judgment.  For the following reasons, the Court grants summary

judgment on all counts for Defendants Jay Williams and Iris Guglucello.  The Court denies, in

part, and grants, in part, summary judgment for Defendants City of Youngstown and Jay

Macejko.

### II. FACTUAL BACKGROUND

1

As is typical in discrimination cases, Plaintiff Bassil Ally ("Ally") and Defendants tell completely different versions of what is essentially the same story. As a result, several facts are in dispute. As for what is not in dispute, the parties generally agree that Plaintiff has worked and continues to work for the Defendant City of Youngstown ("Youngstown") since 2002, and that he has reported to Defendant Jay Macejko ("Macejko") as an Assistant Prosecutor since 2006. The parties also agree that Plaintiff is a practicing Muslim of Middle Eastern descent, and that as part of his religious beliefs, Plaintiff has regularly attended religious services at his Mosque, which services are held at approximately 1:30 p.m. on Fridays.[1] Beyond these basic facts, little else is agreed.

This litigation stems from a dispute between Plaintiff and Macejko that occurred on January 11, 2008, and the long and sordid fallout that ensued. Macejko had advised Plaintiff that there was to be a staff meeting that afternoon at 2:00 p.m. Plaintiff objected to the meeting time because it conflicted with his plans to attend his Mosque. An argument ensued.

While Plaintiff and Defendants agree that there was a discussion at that time between Plaintiff and Macejko about Plaintiff's religious obligations and the conflict imposed by the scheduled meeting, they disagree about the tone of it, who said what, and even what the purpose of the planned meeting was. Plaintiff suggests that the meeting time was intentionally set when Macejko knew that Plaintiff was to attend his Mosque; Macejko has responded that the time was the most convenient for all to attend. Plaintiff argues that the meeting at issue was scheduled to address complaints by fellow prosecutors about his attending Mosque services on Friday afternoons. Macejko claims the meeting was intended to address staffing issues surrounding the

---

[1]     Defendants point out that Plaintiff has missed his Mosque service at least twice in the six years preceding this action. ( Doc. No. 84 at 3 )

2

loss of a prosecutor to bed rest. Plaintiff claims that he was calm and cordial during this exchange, and maintains that he was at most "less than polite." Macejko contends that Plaintiff was "insolent," used a tone that was "inappropriate," and "refused to attend the emergency meeting." Plaintiff alleges that Macejko threatened to fire him, telling him that " If you're not there, you'll be out of here." However, Macejko claims that he instead told Plaintiff that he could attend his religious service, but that he needed to return by 3:00 p.m. The differing accounts of the facts do not end there, however. After allegedly being threatened with his job, Plaintiff attempted to speak with the City's Law Director, Defendant Iris Guglucello ("Guglucello"). Because she was unavailable, Plaintiff then took the matter to Mayor Jay Williams ("Williams" ). Plaintiff states that Williams was equally hostile, stating to Plaintiff that " if [he] didn't attend the meeting, there would be consequences." Williams disputes this, claiming that instead he and Plaintiff discussed religion, and that he encouraged the Plaintiff to take the afternoon off, amongst other things.

Sometime after Plaintiff's meeting with Williams, Macejko had a meeting with Guglucello to discuss Plaintiff's alleged conduct and its implications for his continued employment with the City. Plaintiff contends that Guglucello "told [Macejko] he could fire [Plaintiff ] for insubordination." However, Guglucello maintains that while she advised Macejko that insubordination was a proper grounds for termination, she never actually told him that he had the authority to terminate Plaintiff.

Plaintiff claims that Macejko only permitted him to attend his Mosque *after* he sent a letter to Defendants Macejko, Guglucello, and Williams stating that he believed that their unwillingness to accommodate him was unconstitutional, and requesting a later time for the

scheduled meeting. Macejko claims he actually first told Plaintiff he could attend his Mosque during their initial discussion that morning.

Plaintiff ultimately went to his Mosque that afternoon, missing the 2:00 p.m. meeting. When he returned, Macejko advised him that his employment with the City was terminated. Plaintiff maintains that he was fired for attending his Mosque.  Macejko has countered that he attempted to fire Plaintiff  for insubordination.

That same afternoon, as Plaintiff was leaving the office, he spoke with Guglucello. Plaintiff told Guglucello that Macejko had fired him.  Guglucello advised Plaintiff that Macejko didn't have the authority to fire him, instructed him to go home and indicated that she would call him.

Plaintiff argues that these series of events left him with uncertainty about the state of his employment.  Guglucello responds that she made it clear that Mr. Macejko did not have the authority to terminate Plaintiff, and argues that after their meeting, Plaintiff  had no reason to believe he was actually fired.

The following Monday, Plaintiff was placed on paid administrative leave.  A meeting was scheduled between Guglucello and Plaintiff for that Wednesday.  When the eventual meeting between Plaintiff and Guglucello failed to resolve anything, Plaintiff was left on administrative leave until the city could consult with its human resources consultant about the situation.  During this initial week of leave, Plaintiff filed a charge of discrimination with the Ohio Civil Rights Commission (OCRC).  The OCRC later found that it was probable that the City had engaged in unlawful discrimination.

Defendants met with their human resources consultant, Clemans Nelson, on February 1,

4

2009, to discuss Plaintiff's employment.  During this meeting, Nelson allegedly advised

Defendants that terminating Plaintiff at that time could invite a lawsuit.  Plaintiff was returned to

work the following Monday, February 4, 2009.

Plaintiff alleges that he has suffered numerous overt acts of discrimination.  Specifically,

he cites to a cartoon left at his desk when he returned from administrative leave wherein a

character dressed in traditional bedouin garb stands next to a weeping man dressed in a shirt and

tie with suspenders.  The caption of the cartoon reads, "Justice prevails! Basil (sic) returns!"

Plaintiff further points to two text messages sent by Macejko to one of Plaintiff's co-workers,

which Plaintiff obtained in discovery and was unaware of prior to this suit being filed.  In one

text Macejko refers to Plaintiff as a POS (Plaintiff contends this stands for "Piece of S#*t").  The

second reads, "Hallejuah (sic)!  It must be the same miraculous power that has healed the prince

{Mr. Ally} we are a truly blessed office."  Plaintiff also references two jokes made by different

co-workers.  In one, a fellow prosecutor asked Plaintiff if he could have one of his friends in Al

Qaeda blow up the State of Pennsylvania.  In the other, a police officer asked Plaintiff if he

needed to check him for bombs.  In addition to nearly being terminated, Plaintiff also alleges that

since returning to the office, he has been subjected to several retaliatory and discriminatory acts.

In short, the Plaintiff claims that since returning, he has been subjected to (1) "nitpicking ", i.e.

subjected to treatment other prosecutors are not, such as being required to account for his

whereabouts at all times, including the bathroom;  (2) jokes and a cartoon targeted at Plaintiff's

religion and national origin;  (3) discipline which other similarly situated non-Muslim employees

were not subjected to; (4) assignment to additional duties, some of which conflict with his

religious obligations;  (5) assignment to a Judge's courtroom which holds sessions on Friday

afternoons (in conflict with his Mosque obligations);  (6)  isolation and ostracization; and  (7) reduction in prosecutorial authority.

Defendants respond to some of these allegations but do not address all of them.  Only Defendant Macejko responds to these allegations in any material way.  Macejko argues that: (1) Plaintiff was disciplined appropriately;  (2) he was justified in assigning additional duties to Plaintiff because Plaintiff had been on paid leave;  (3) that Plaintiff had been previously assigned to Judge Milich's Courtroom by his previous supervisor without complaint; and  (4) that he is not responsible for Plaintiff's isolation and ostracization.  Defendants Guglucello and Mayor Williams simply argue that they played no role in any of the complained of  actions.  None of the Defendants attempt to address Plaintiff's other allegations.

Plaintiff filed suit against Youngstown, Macejko, Guglucello, and Williams on May 18, 2009.  Plaintiff initially sought relief against Defendants under 42 U.S.C.A. § 2000e-2 (Title VII)  and Ohio R.C. § 4112.02 , charging Hostile Work Environment/Harassment, Discrimination, and Retaliation and claims brought under 42 U.S.C. § 1983 against the individually named Defendants for violating Plaintiff's constitutional rights to free exercise of religion and equal protection.  On December 12, 2009, Plaintiff filed an Amended Complaint, dropping the Hostile Work Environment/ Harassment claim against all Defendants except Youngstown and acknowledged that he did not bring Title VII claims against any individual Defendants.  That same day Plaintiff moved to dismiss his § 1983 claims and the Court granted Plaintiff's motion.  On September 30, 2010, all Defendants filed individual Motions for Summary Judgment.

### III. LAW AND ANALYSIS

6

### Civil Rule 56 Standard

A summary judgment shall be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(a). The burden is on the moving party to conclusively show no genuine issue of material fact exists, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy. Inc. v. Espy*, 39 F. 3d 1339, 1347 (6th Cir. 1994). The moving party must do so by either pointing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials" or by "showing that the materials cited ( by the adverse party ) do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." See Fed. R. Civ. P. 56(c)(1)(A), (B). A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F. 3d at 1347.

This Court does not have the responsibility to search the record *sua sponte* for genuine issues of material fact. *Betkerur v. Aultman Hospital Ass 'n.*, 78 F. 3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F. 2d 399, 404-06 (6th Cir. 1992). The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Bias v. Advantage*, 905 F.2d 1558, 1563 ( C.A.D.C., 1990); *Anderson v. Liberty Lobby, Inc*., 477 U.S.

242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distributors Benefits Ass 'n v. Northfield Ins. Co.*, 323 F. 3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

### III. PLAINTIFF'S CLAIMS

Plaintiff's federal and state discrimination, retaliation and harassment/hostile work environment claims may be analyzed together, because "Ohio's requirements are the same as under federal law." See *Miller v. City of Canton*, 319 Fed. Appx. 411, 419 (6th Cir. 2009); *Russell v. University of Toledo* 537 F.3d 596 (6th Cir. 2008); *Carter v. Univ. of Toledo*, 349 F.3d 269, 272 (6th Cir.2003); *Ohio Civil Rights Comm'n v. Ingram*, 69 Ohio St.3d 89 (Ohio 1994); *Johnson-Romaker v. Kroger Ltd. Partnership One,* 609 F.Supp.2d 719 (N. D. Ohio 2009).

**a. Hostile Work Environment/ Harassment.**

Plaintiff asserts his hostile work environment claim against only one defendant, the City of Youngstown. A hostile work environment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." See *Bailey v. USF Holland, Inc.,* 526 F.3d 880 (6th Cir. 2008); *Butler v. Cooper-Standard Automotive Inc.*, No. 8-162, Slip Copy, 2009 WL 455337, (N. D. Ohio Feb. 23, 2009); *Bowman v. Shawnee State University,* 220 F.3d 456, 462, (6th Cir. 2000); *Hafford v. Seidner*, 183 F.3d 506 (6th Cir.1999).

To establish a hostile work environment claim, Plaintiff  must prove that:  (1) he was a member of a protected class;  (2) he was subjected to unwelcome harassment;  (3) the harassment was based on Plaintiffs' protected status;  (4) the harassment affected a term, condition, or privilege of employment; and  (5) the employer knew or should have known about the harassing conduct but failed to take corrective or preventative actions.  *Armstrong v. Whirlpool Corp.*363 Fed. App'x. 317 (6th Cir.2010); *Barrett v. Whirlpool Co.*, 556 F.3d 502, 515 (6th Cir.2009).

The Supreme Court has ruled that, in order to constitute actionable harassment, the conduct complained of must be judged by both an objective and a subjective standard, i.e., it must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must regard that environment as abusive.  *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993).; *Williams v. General Motors Corp.*, 187 F.3d 553, 566 (6th Cir. 1999), *Abeita v. TransAmerica Mailings*, *Inc.,* 159 F.3d 246 (6th Cir.1998).

The first three prongs of the prima facie case are readily met here.  No one disputes that Plaintiff is a member of a protected class, that he was subject to at least some unwelcome harassment, and that some of the harassment was based on his religion and national origin.[2]  Thus, in evaluating Youngstown's Motion for Summary Judgment, the Court only needs to determine if  there is a genuine dispute as to whether the harassment complained of was so severe or pervasive that it affected a term, condition, or privilege of Plaintiff's employment, and whether Youngstown is liable for such harassment.

## 1) The severe or pervasive standard

---

[2]     While the list of evidence cited by both sides is somewhat different, with the defendant disputing all indirect acts cited as having a legitimate basis, there can be no dispute that the evidence of discrimination presented includes some acts that were clearly based on Plaintiff's religion and national origin;  namely the jokes and cartoon.

The Court must examine the incidents at issue to determine if they are severe or pervasive so as to create a hostile work environment.  "Isolated incidents, however, unless extremely serious, will not amount to discriminatory changes in the terms or conditions of employment. *(Citation omitted).*  Appropriate factors for the court to consider when determining whether conduct is severe or pervasive enough to constitute a hostile work environment include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Downs v. Postmaster General*, 31 Fed. App'x. 848, 850-51 (6th Cir. 2002) citing *Harris,* 510 U.S. at 23.

Considering the evidence as presented, the Court finds the alleged harassing comments too isolated, remote and of insufficient severity to constitute severe or pervasive conduct.  First, there are only five total incidents alleged by Plaintiff to have been directed towards his religion or national origin.  One, by a police officer who asked Plaintiff if he needed to check Plaintiff for bombs.  The next was a comment by a co-worker asking Plaintiff if Plaintiff could have his friends in Al Qaeda bomb the state of Pennsylvania.  It is worth noting that Plaintiff presents no evidence that he complained of these comments to his superiors nor does he present evidence that he found these comments threatening.  Plaintiff contends that the second comment, by a co-worker, was made in the presence of Macejko but Plaintiff admitted he never complained about it, nor did he report the comment made by the police officer to his supervisors.  While two comments made by separate individuals may be considered offensive utterances, (its unclear whether the police officer asking if he needed to check Plaintiff for bombs was prompted by Plaintiff's religion/national origin or from the fact that he was returning from being placed on

10

administrative leave), they are not physically threatening nor are they so severe as to satisfy the severe or pervasive standard on their own. The cartoon at issue could certainly be construed as making fun of Plaintiff's national origin as it dresses one character in bedouin garb but does not nothing to identify the national origin of the other character presumably representing management/co-workers. The message itself : "Justice Prevails! Basil (sic) Returns!" may be read in a positive albeit insensitive light, in that the plain language of the caption seemingly celebrates Plaintiff's return to work and victory over management. Again, the cartoon, whose creator remains unknown, standing on its own is not intimidating, threatening or severe to satisfy the severe or pervasive standard.

The remaining two items, text messages sent by Macejko to a coworker, were unknown to Plaintiff prior to filing his Complaint. They do not support a finding that they were discriminatorily insulting, ridiculing or intimidating. First, calling Plaintiff a POS does not implicate his religion or national origin. Nor does Macejko's statement "Hallejuah (sic)! It must be the same miraculous power that has healed the prince {Mr. Ally} we are a truly blessed office." "Hallelujah" is a Hebrew term found in the Psalms and is commonly used in Jewish and Christian practices. The Court is unaware of its use in Islamic practices, particularly since the term itself incorporates the hebrew word for God. See *Wikipedia, http://en.wikipedia.org/wiki/Hallelujah,*. Finally, the implication in the text of miraculous healing is not indicative of a particular faith nor is the term "prince" a term implicating a particular nationality since its use is common to a myriad of regions and cultures. Therefore, the last two comments by Macejko cannot be logically construed as directing harassment or abuse at Plaintiff's religion or national origin and do not present evidence of discriminatory harassment

11

or hostile work environment based on his being a member of a protected class.  The first two comments and single cartoon are too isolated, non-threatening and, while possibly offensive, lack the severity or pervasiveness to support a claim for harassment/hostile work environment. The Sixth Circuit has also determined that three acts are insufficient to show pervasiveness.  See *Harrington v. Boysville of Michigan, Inc.,* 145 F.3d 1331, 1998 WL 252755 (6th Cir.1998).

The fourth element requires Plaintiff show that the harassment affected a term or condition of his employment. The harassment in question meets this standard if it is "sufficient to show that the alleged conduct constituted an unreasonably abusive or offensive work-related environment or adversely affected the employee's ability to do his or her job." *Bailey v. USF Holland, Inc.* 526 F.3d 880, 886 (6th Cir. 2008) *citing Moore v. KUKA Welding Sys. & Robot Corp.,* 171 F.3d 1073, 1079 (6th Cir.1999).

Plaintiff complains that he suffered numerous adverse employment actions upon his return from administrative leave, including discipline, reduction in authority, additional work assignments and heightened scrutiny.  According to Plaintiff, these acts by Defendant Macejko offer further evidence of a hostile work environment/harassment.  "[C]onduct must be extreme to amount to a change in the terms and conditions of employment...." *Faragher v. City of Boca Raton,* 524 U.S. 775, 788, (1998).  The above acts on their own do not evidence unlawful harassment based on religion or national origin without some connection to Macejko's discriminatory harassment.  Here, we have no evidence that Macejko made any discriminatory comments.  While the above employment acts would certainly be pertinent to Plaintiff's discrimination and retaliation claims on the element of adverse employment acts and retaliatory acts, they do not support Plaintiff's hostile work environment/harassment claim as they do not

12

evidence Macejko's extreme conduct.  In *Broska v. Henderson*, 70 Fed. App'x. 262, 270 (6th Cir. 2003), the Sixth Circuit rejected Plaintiff's claim of harassment, holding that a supervisor's continuous monitoring and criticism of Plaintiff's work, absent evidence of physical intimidation, verbal abuse or some evidence that the supervisor harassed him outside work or on breaks did not constitute unlawful harassment.  Here, Plaintiff's allegations of harassing conduct are similar to those in *Broska*.  Considering that Plaintiff has been employed by Defendant for over six years, the Court finds that three comments, none of which can be reasonably construed as severe, do not constitute pervasive harassment nor do they demonstrate that the office was permeated with hostility towards Plaintiff based on his religion or national origin.  Therefore, the especially in the absence of any overtly discriminatory statements or acts by Macejko, the Court holds that Youngstown is not liable on Plaintiff's hostile work environment/harassment claim.  Also, Plaintiff is a prosecutor, which the Court cannot ignore.  The job requires a certain amount of "thick skin" because of the public and internal pressures associated with the job.  A reasonable prosecutor under the same circumstances would not find the environment to be hostile or abusive.

**b. Discrimination and Retaliation**

Plaintiff asserts his discrimination and retaliation claims against all Defendants.  Title VII requires that an employer offer a reasonable accommodation of an employee's sincerely held religious practices and beliefs or demonstrate that it could not do so without incurring undue hardship.  42 U.S.C.§ 2000e (j); *Cooper v. Oak Rubber Co.*, 15 F.3d 1375, 1378 (6th Cir. 1994); *McGuire v. General Motors*, 956 F.2d 607, 609 (6th Cir. 1992).  In order to establish a prima facie case of discrimination, Plaintiff must show that:  1) he holds a sincere religious belief that

13

conflicts with an employment requirement;  2) he has informed his employer of the conflict; and

3) he was discharged or disciplined for failing to comply with the conflicting requirement.

*Cooper*, 15 F.3d at 1378.

Title VII also protects an employee against retaliation for engaging in protected conduct.

To establish a prima facie case of discrimination, Plaintiff must show that: 1) he engaged in an

activity protected by Title VII;  2) the activity was known to the defendant;  3) he was subject to

an adverse employment action; and  4) the adverse action occurred because of the protected

activity.  *McClain v. NorthWest Cmty. Corr. Ctr.*, 440 F.3d 320, 335 (6th Cir. 2006); *Singfield v.*

*Akron Metro Housing Auth.*, 389 F.3d 555, 563 (6th Cir. 2004).

An adverse employment action is one that is " more disruptive than a mere inconvenience

or an alteration of job responsibilities."  *Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir.

1999) (quoting *Crady v. Liberty Nat'l Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir.

1993)); See also *Bowman,* 220 F.3d at 461-62.  Whether or not the action is adverse is analyzed

case by case, looking to "indices that might be unique to a particular situation." *Id.*  Under this

standard, "*de minimus* employment actions are not materially adverse and, thus, not actionable."

*Id.*

Because Macejko lacked the proper authority to terminate Plaintiff, Defendants argue

that Plaintiff never suffered an adverse employment action.  However true it may be that no

tangible employment action occurs where a plaintiff is fired and re-hired in the same day, *Keeton*

*v. Flying J, Inc.*, 429 F.3d 259, 263-64 (6th Cir. 2005); *Birch v. Cuyahoga County Probate*

*Court*, 392 F.3d 151 (6th Cir. 2004); *Bowman v. Shawnee State University*, 220 F.3d 456 (6th

Cir. 2000), Plaintiff's claims of discrimination and retaliation are not isolated to Macejko's

14

attempted firing of Plaintiff. "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Ford v. Gen. Motors Corp.,* 305 F.3d 545, 553 (6th Cir.2002). Plaintiff also cites numerous other actions in support of his claims, such his placement on administrative leave, rotation to a courtroom that holds hearings during the time Plaintiff would attend religious services, discipline, assignments of extra work, and reduction in prosecutorial authority.

Defendant argues that some of these other acts, such as rotating Plaintiff to another court, and assigning him new and additional work, did not constitute adverse employment actions. Defendants rely entirely on *Kocsis v. Multi-Care Management Inc*. 97 F.3d 876 (1996) to support this position. In *Kocsis*, a nurse brought suit against her employer when it reassigned her and failed to promote her. The defendant employer filed a motion for summary judgment, arguing that Kocsis had not suffered an adverse employment action. When the District Court found for the employer, Kocsis appealed. In affirming the lower court's decision, the Court of Appeals found that " reassignments without salary or work hour changes do not ordinarily constitute adverse employment [actions]." *Id.* To that end, the Court found that "mere inconvenience or an alteration of job responsibilities" is not enough.

However, *Kocsis* is distinguishable from the case at bar. Here, Plaintiff's hours *were* changed, both directly and indirectly. Certainly being assigned to night court is a change of hours. To that end, by reassigning Plaintiff to a courtroom with Friday afternoon sessions, and then to housing court with Friday afternoon sessions, when Plaintiff had previously enjoyed the

15

flexibility of having Friday afternoons free to attend his Mosque, Defendants essentially replaced Plaintiff's "flexible hours" with "inflexible hours."  As the Supreme Court has found,  " a reassignment of duties can constitute...discrimination....[A]lmost every job category involves some duties that are less desirable than others...a jury could reasonably conclude that [a] reassignment [was] materially adverse to a reasonable employee."  *Burlington N. & Sante Fe Ry.*, 548 U.S. 53, 68 (2006).  Furthermore, Plaintiff's other claims, such as nitpicking, discipline, and reduction in prosecutorial authority, could support a jury in finding that Plaintiff suffered a adverse employment action.  *Hill v. Nicholson*, 383 Fed. Appx. 503 (6th Cir. 2010); *Michael v. Caterpillar Financial Services Corp*. 496 F.3d 584 (6th Cir. 2007); see also *Hout v. City of Mansfield* 550 F.Supp.2d 701 (N. D. Ohio,2008).  See also *Freeman v. Potter*, 200 Fed.App'x. 439, 448, (6th Cir. 2006)(" under the right circumstances, even a scheduling change or the denial of "flex time" could be a "materially adverse" action...").   Therefore, for purposes of Plaintiff's discrimination and retaliation claims the Court finds he has satisfied his burden.

Here, Plaintiff has met the elements of both discrimination and retaliation.  No one disputes that Plaintiff  holds a sincere religious belief, or that the Defendants were aware of the conflict.  The undisputed evidence shows that when he was informed of the Friday January 11, 2008 meeting, Plaintiff informed his supervisor of the conflict with his attendance at his Mosque. After he failed to appear he was allegedly terminated, placed on administrative leave and upon his return, was subject to several potentially adverse employment actions, including rotations that further conflicted with his religious obligations, reassignments, loss of authority, discipline and additional work assignments.

In addition, Plaintiff's complaint to Macejko about scheduling a meeting at the time of

Plaintiff's religious obligation and Plaintiff's filing of an OCRC complaint are both protected activities and the undisputed evidence demonstrates they were known by his employer. Furthermore, the Court has established above that Plaintiff has met his burden on demonstrating an adverse employment action. Also, Plaintiff has produced evidence of the timing of the adverse employment actions, which occurred shortly after his missing the January 11, 2008 meeting. Coupled with the subsequent adverse actions in the months following his engaging in protected activity, Plaintiff has satisfied his prima facie burden to show retaliation.

**3) McDonnell-Douglas Burden Shifting**

Where, as here, a plaintiff  largely relies on circumstantial evidence to make his prima facie case, the *McDonnell Douglas* burden-shifting framework applies.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).  Under the *McDonnell Douglas* standard, once an employee sets forth a prima facie case, the burden of proof shifts to the employer to articulate some legitimate, non discriminatory reason for its actions.  *McDonnell Douglas Corp* 411 U.S. at 802.   If the employer carries this burden, the plaintiff must then prove by a preponderance of the evidence that the reasons offered by the employer were a pretext for discrimination.  *Id.*   The employer need not prove a nondiscriminatory reason; they need only articulate one.  *Hartsel v. Keys*, 87 F.3d 795, 800 (6th Cir. 1996).  A defendant articulates such a rationale when it comes forward with evidence that it took action against an employee for reasons unrelated to the alleged discrimination.  *Reeves v. Swift Trans. Co.*, 446 F.3d 637, 641-42 (6th Cir. 2006).  However, the ultimate burden of persuasion remains at all times with the plaintiff.  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993); *Browning v. Dep't of the Army*, 436 F.3d 692, 695 (6th Cir.

17

2006); *Newman v. Fed Express Corp*., 266 F3.d 401, 405 (6th Cir. 2001).

In order to show that the employer's proffered reason had no basis in fact, the plaintiff must show that "1) that the proffered reason had no basis in fact,  2) that the proffered reason did not actually motivate the action, or  3) the proffered reason [was] insufficient to motivate the action*." Cicero v. Borg-Warner Automotive*, *Inc.,* 280 F.3d 579, 589 (6th Cir. 2002).

**Defendant's articulated non-discriminatory reason for terminating Plaintiff**

In addressing Macejko's attempted firing of Plaintiff, Youngstown explains that Macejko attempted to fire Plaintiff for nondiscriminatory reasons, namely " the culmination of Plaintiff's insubordination and routine lack of professionalism..."  Youngstown cites as evidence Macejko's deposition, where he claims that Plaintiff had disregarded the orders of his superiors on how to handle cases, used an inappropriate tone towards supervisors, and was regularly late to work.[3]  Youngstown further contends Plaintiff was disciplined for violating clear policies of the department.  Thus, Defendant has satisfied its burden to articulate a non-discriminatory reason for its actions.

**Pretext**

The burden shifts back to Plaintiff to show pretext.  Plaintiff responds with evidence that this proffered reason is pre-textual, citing secret recordings he made of Macejko, in which Macejko states to Plaintiff that he was " one of [Macejko's] best workers in the courtroom," and that he thought that " when it comes to the courtroom, [Plaintiff] is one of the best, if not the

---

[3]        Upon reviewing the deposition cited, it is noteworthy that Macejko affirmatively denies that Plaintiff regularly used an inappropriate tone with superiors.  Rather, Macejko merely claims that Plaintiff's tone during the January 11, 2008 discussion about attending the scheduled meeting "pushed [him] to his limit."

18

best."  Plaintiff also points to evidence that suggests his tone with Macejko during their discussion about the planned meeting on January 11, 2008 was appropriate.  Plaintiff has also shown that (1) he was placed on administrative leave, (2) subsequently rotated to a courtroom that conducts hearings on Friday afternoons, and (3) was subjected to several disciplinary actions occurring within a few months after Plaintiff complained to his superiors that he couldn't attend the Friday meeting due to religious requirements.

For instance, according to Plaintiff, shortly after returning to the office , Plaintiff was disciplined for (1) reducing a DUI charge without Macejko's preapproval, and (2) being late to work.  Defendants explain that such discipline was deserved, as such conduct violates the City's policies.  Plaintiff responds that others were not disciplined for similar conduct.   Defendants cite the deposition of Assistant Prosecutor John Marsh as evidence that others were disciplined for being late.  Plaintiff cites the same deposition to support his claim that others were permitted to unilaterally amend charges, and not punished for being late.  Plaintiff also claims he was rotated to another courtroom;  that of Judge Milich who conducts hearings on Friday afternoons.  Plaintiff argues he has presented sufficient evidence of pretext to warrant denying Youngstown's Motion for Summary Judgment on Plaintiff's discrimination and retaliation claims.  Because these acts were done by Macejko in his role as supervisor, the Court denies his Motion on Plaintiff's discrimination and retaliation claims but grants Macejko's Motion on Plaintiff's hostile work environment claim.

**Joseph Macejko**

Macejko argues he cannot be held individually liable because Title VII expressly proscribes individual liability.  Plaintiff agrees and limits its claims of individual liability to his

19

Ohio statutory claims.

Macejko counters that Ohio law grants immunity to employees of political subdivisions for acts in violation of § 4112.  Defendant cites to the Ohio Appellate Court case *Campolieti v. City of Cleveland*, 184 Ohio App.3d 419 (Ohio Ct. App. 2009).  While *Campolieti* does extend the immunity protections of O.R.C. § 2744.03 to employees of muncipalities charged with discrimination,  it stands in contrast to the weight of authority in Ohio state and federal courts holding that the immunity of § 2744.03 is not available to a defendant in discrimination suits brought under § 4112.  The Southern District of Ohio specifically addressed this issue in its thorough examination of *Campolieti* in *Satterfield v. Karnes*, 736 F.Supp.2d 1138 (S.D.Ohio, 2010) wherein it concluded that should the Supreme Court of Ohio address this issue it would find the immunity afforded municipal employees under § 2744.03  not available in discrimination suits.  This Court finds the reasoning of the Southern District of Ohio sound and agrees that the weight of authority of Ohio courts militates against immunity.

Because the adverse employment acts taken against Plaintiff were authorized by Macejko, who had the authority to assign Plaintiff to various duties, discipline Plaintiff and reduce his prosecutorial authority, Macejko's Motion for Summary Judgment is denied because the facts and circumstances surrounding these actions are within the purview of a jury.

### Iris Guglucello

Iris Guglucello moves for summary judgment on all of Plaintiff's claims, contending she did not engage in any discriminatory, harassing or retaliatory conduct against Plaintiff.  It is undisputed that Guglucello did not make any disparaging or discriminatory remarks or writings directed at Plaintiff's religion or national origin.  Plaintiff's Amended Complaint admits

Guglucello did not have the authority to fire Plaintiff and in fact, told Mr. Ally the day Macejko told him he was fired that Macejko did not have the authority to terminate Plaintiff.  The only allegations against Guglucello contend she informed Plaintiff he was placed on administrative leave, transferred only the housing court duties (not Plaintiff personally) from the civil division of the Law Director's office to the criminal division of the prosecutor's office and refused to allow Plaintiff's attorney to sit in on an interview with Plaintiff upon his return from administrative leave.

Guglucello contends she is not liable since she did not discipline, terminate or assign any duties to Plaintiff and contends the only involvement she had was the alleged termination of Plaintiff which, in fact, was not a termination because Plaintiff was returned to his employment, lost no pay or benefits and does not constitute an adverse employment action.  She also contends there is no individual liability under Title VII and § 4112.

While Gugulucello is correct and Plaintiff concedes Title VII prohibits individual supervisory liability Ohio Revised Code Section 4112 does not.  (...unlike Title VII, Ohio law permits employment discrimination claims against individual supervisors." *Kendel v. Local 17AUnited Food and, Commercial Workers,* 748 F.Supp.2d 732, 741 -742 (N. D. Ohio, 2010) *citing Genaro v. Cent. Transp., Inc.,* 84 Ohio St.3d 293, 300,(Ohio 1999).  ("Accordingly, we ... hold that for purposes of R.C. Chapter 4112, a supervisor/manager may be held jointly and/or severally liable with her/his employer for discriminatory conduct of the supervisor /manager in violation of R.C. Chapter 4112.").  Thus, Plaintiff may bring suit against individual supervisors under Ohio law.

However, under Ohio law, individual liability only extends to the supervisor's own

21

unlawful conduct.

> Individual liability under Ohio Revised Code chapter 4112 extends only to an individual's own actions, and therefore, only to direct supervisors or supervisors who played a direct role in making an employment decision. *See Genaro,* 703 N.E.2d at 787 ("[I]ndividual supervisors and managers are accountable for their *own* discriminatory conduct occurring in the workplace environment.") (emphasis added); *see also Brown v. Worthington Steel, Inc.,* 211 F.R.D. 320, 327 (S.D.Ohio 2002) (finding that under *Genaro,* "only the 'decision maker' of the adverse employment action is liable") (quoting *Jones v. Kilbourne Med. Labs.,* 162 F.Supp.2d 813, 830 (S. D. Ohio 2000)).

*Williams v. General Elec. Co.* 269 F.Supp.2d 958, 970 (S. D. Ohio, 2003)

Here, Plaintiff has produced no evidence contradicting Guglucello's testimony that only the Mayor could terminate Plaintiff.  There is no evidence Guglucello advocated for or influenced the decision to terminate Plaintiff.  However, even if the Court were to assume Guglucello played a  role, influenced or otherwise brought about Plaintiff's alleged termination under Sixth Circuit law a temporary termination where no tangible loss of economic benefits occurs is not an adverse employment action.  See *Bowman,* 220 F.3d at 462 ("cases where the employment action, while perhaps being materially adverse if permanent, is very temporary also do not constitute materially adverse employment actions.")  Neither is placing an employee on paid administrative leave an adverse employment action.  See *Michael v. Caterpillar Financial Services Corp.* 496 F.3d 584, 594 (6th Cir. 2007) citing *Peltier v. United States*, 388 F.3d 984, 988 (6th Cir.2004) ("holding that an employee's placement on paid administrative leave pending the outcome of an investigation is not an adverse employment action").

Here, the undisputed testimony is that after Plaintiff was allegedly terminated and then placed on administrative leave, he was returned to his former duties and suffered no loss of

income.  Thus, the alleged termination and administrative leave were not adverse employment actions under applicable Sixth Circuit law.  Since Plaintiff's alleged termination is the sole adverse action alleged against Guglucello, Plaintiff's claims against her fail as a matter of law.  Plaintiff's other allegations that Guglucello reassigned the housing court to the prosecutor's office fails because she did not reassign Plaintiff to the housing court.  In fact, there is no evidence she had any authority to assign Plaintiff to any duties.  Therefore,  the Court grants Guglucello's motion on all counts.

**Mayor Williams**

Defendant Jay Williams, Mayor of Youngstown, moves for summary judgment on all counts on largely the same arguments as Guglucello, namely no adverse employment action was taken by him against Plaintiff and he did not engage in any unlawful conduct.

Plaintiff's Amended Complaint alleges Williams issued a "thinly veiled threat" that there would be consequences if Plaintiff attended his Mosque rather than attend the January 2008 meeting set by Macejko.  Plaintiff further contends Williams approved Plaintiff's alleged termination.  The Amended Complaint does not allege Williams authorized any additional changes in rotation or assignments or played a part in disciplining Plaintiff.

Because Williams' only alleged wrongful conduct involves the alleged termination of Plaintiff the Court, having found that under applicable Sixth Circuit precedent the alleged termination and administrative leave were *de minimus* injuries, grants Williams' Motion for Summary Judgment on all counts.

**Attorney Fees**

Finally, Defendants Youngstown and Macejko seek summary judgment that Plaintiff cannot recover attorney fees or punitive damages.  While Plaintiff acknowledges he cannot recover attorney fees under Ohio law against Youngstown, he does claim Title VII expressly permits such recovery.  Conversely, Plaintiff acknowledges he does not allege a Title VII claim against Macejko individually but is entitled to attorney fees under Ohio law against Macejko.

The Court agrees that Title VII expressly permits the recovery of attorney fees to the prevailing party and therefore, denies Youngstown's motion on attorney fees.  See 42 U.S.C. § 2000e-5(k).  Ohio law permits recovery of attorney fees under §  4112 providing Plaintiff can show that he is entitled to punitive damages.

**Punitive damages**

Plaintiff acknowledges he cannot recover punitive damages against Youngstown under either Title VII or Ohio statutory law § 4112.  (Plaintiff's Brief in Opposition pg. 39).  Plaintiff does seek punitive damages under Ohio law against Macejko.  Under Ohio law, to be entitled to punitive damages, a Plaintiff must prove by clear and convincing evidence that Defendant acted with actual malice or consciously disregarded the rights and safety of Plaintiff that had the great probability of causing substantial harm.  See *Preston v. Murty*, 32 Ohio St.3d 334, (Ohio 1987).

The Court holds that Plaintiff has submitted sufficient facts so that a jury may find Plaintiff acted with actual malice or consciously disregarded Plaintiff's rights.

**IV. CONCLUSION**

Therefore, for the foregoing reasons, the Court grants the various motions and claims as follows:

24

### City of Youngstown

The Court grants, in part, Youngstown's Motion (ECF # 81) on Plaintiff's hostile work environment/harassment claims under Title VII and Ohio law, and on punitive damages under Title VII and Ohio law, and attorney fees under Ohio law.  The Court denies, in part, Youngstown's Motion on Plaintiff's Ohio and Title VII claims for discrimination and retaliation and for attorney fees under Title VII.

### Joseph Macejko

The Court grants, in part, Macejko's Motion for Summary Judgment (ECF # 83) on Plaintiff's hostile work environment claims under Title VII and Ohio law, and any claims alleged under Title VII against Macejko individually.  The Court further grants Macejko's Motion on punitive damages under Title VII and attorney fees under Title VII.  The Court denies Macejko's Motion, in part, on Plaintiff's discrimination and retaliation claims brought under Ohio law and Plaintiff's punitive damages claim and attorney fees claims brought under Ohio law.

### Guglucello and Williams

Defendant Guglucello's (ECF # 82) and  Williams' (ECF#84) Motions for Summary Judgment are granted on all counts.

IT IS SO ORDERED.

  S/Christopher A. Boyko   
CHRISTOPHER A. BOYKO
United States District Judge

August 12, 2011

25